[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16411
Non-Argument Calendar

_____

D.C. Docket No. 2:14-cv-00350-SPC-MRM

MICHAEL ANAGNOS,
an individual,

Plaintiff-Appellant,

versus

THE NELSEN RESIDENCE, INC.,
a.k.a. Haven of Divine Love, The Nelsen Residence, Inc.,
JEROME VALENTA,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(January 10, 2018)

Before TJOFLAT, WILLIAM PRYOR and NEWSOM, Circuit Judges.

PER CURIAM:

This appeal presents the issue whether an employee seeking to recover

minimum wages under the Florida Constitution, Fla. Const. art. X, § 24, must

prove that his employer is covered under the Fair Labor Standards Act, 29 U.S.C. § 206(a). Michael Anagnos sought to recover unpaid state minimum wages from his former housing community, The Nelsen Residence, Inc., and its president, Jerome Valenta, premised on the theory that they were an employer covered as "an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises," 29 U.S.C. §§ 206, 203(r)(2)(A), 203(s)(1)(B). At trial, the district court instructed the jury that Anagnos was eligible to recover state minimum wages only if his employer was covered under the Fair Labor Standards Act. The jury found that The Residence and Valenta were not operating a residential care facility and returned a verdict in their favor. Anagnos argues that the state constitutional Wage Amendment is self-executing and creates a right to a minimum wage in Florida without regard to the Fair Labor Standards Act or the Florida Minimum Wage Act. But the Wage Amendment provides, by its terms, "the terms 'Employer,' 'Employee' and 'Wage' shall have the meanings established under the federal Fair Labor Standards Act," Fla. Const. art. 10 § 24(b), and states that the "case law, administrative interpretations, and other guiding standards developed under the federal FLSA shall guide the construction of this amendment and any implementing statutes or regulations," *id.* § 24(f). We affirm.

2

## I. BACKGROUND

In May 2011, Anagnos, who was temporarily wheelchair-bound, applied for an apartment at the Haven for Divine Love, which is operated by and located on property that The Residence owns in Cape Coral, Florida. Anagnos moved onto the property on June 1, 2011, and after his health improved, he began cleaning, performing landscaping services, and aiding with repairs on the property.

Valenta lived in Bakersfield, California, and was unfamiliar with the extent of Anagnos's work. Even so, Valenta suspended Anagnos's rent payments. In the second quarter of 2014, Anagnos demanded to be paid, but Valenta refused on the basis that The Residence accepted only volunteer services. After Anagnos discontinued all work for The Residence and stopped paying his rent, Valenta evicted him.

Anagnos filed an amended complaint against Valenta and The Residence for unpaid minimum wages and for retaliating after receiving a demand for wages in violation of the Florida Constitution, Fla. Const. art. 10, § 24(a), (d), and the Wage Act, Fla. Stat. § 448.110. Anagnos alleged that Valenta and The Residence "violat[ed] . . . the FMWA because he performed work for [their] benefit . . . for which he has never been compensated" and that "[t]he FWMA, via Article X, Sect. 24(c) of the Florida Constitution, mandates" that employers pay employees the state minimum wage. Anagnos sought "to recover . . . unpaid minimum wages, as

3

well as . . . liquidated damages, costs, and reasonable attorney's fees under the provisions of Title XXXI, Chapter 448.110 (Florida Minimum Wage Act) and Fla. Const. art X section 24." Anagnos alleged that Valenta and The Residence were his "employer . . . within the meaning of the Florida Minimum Wage [sic] act pursuant to Section 3(d) of the 'Fair Labor Standards Act' [29 U.S.C. § 203(d)]." Valenta and The Residence answered that Anagnos was not an employee and raised the affirmative defenses that they were exempt from coverage under the Fair Labor Standards Act, 29 U.S.C. § 213, and lacked sufficient employees to constitute an employer under state law, Fla. Stat. § 448.101(3).

Before trial, Anagnos raised a new theory. He argued, in contrast with his complaint, that "Article X, Sect. 24 makes no mention of the FLSA" and "the FMWA's purported requirement that an employee . . . establish FLSA coverage in order to establish entitlement to a remedy for unpaid minimum wages under state law is an unconstitutional restriction on Art. X, Sect. 24 of the Florida Constitution." Anagnos also argued that the jury should answer an interrogatory about whether "Article X, Section 24, . . . require[s] FLSA coverage."

During trial, The Residence elicited testimony that it was not a caregiver to the residents of the Haven. Haven residents Bonnie Ribich, Salvatore Carsi, and Wilfred Rodriguez testified that they did not receive medical care, counseling, meals, or transportation services from The Residence. Rodriguez, who served as

4

the chaplain for The Residence and conducted worship services and Bible studies

occasionally in the chapel on the property, and his wife, Angelica, denied that they

provided counseling to the residents of the Haven. Angelica also testified that they

did not receive a reduction in rent for serving on the board for The Residence.

Angelica classified the Haven as "just a living facility or . . . an elderly, low

income place to live" and stated that the facility did not provide care for or services

to its residents.

Valenta described the Haven as a "hotel motel with efficiency units" that

were available for monthly rental. When asked about the statement on the Haven

website, Valenta responded he was unaware that the phrase "residential care

facility" had a particular meaning "based on some kind of labor law." He insisted

that the property served strictly as "an apartment house," and he denied that The

Residence provided regular meals or transportation for Haven residents.

The district court instructed the jury "to decide whether the Nelsen

Residence and Jerome Valenta were employers covered under the FLSA and [the]

Florida Minimum Wage Act" by virtue of "operating a residential care facility."

The district court stated that, if the jury found "that the Nelsen Residence and

Jerome Valenta were not operating a residential care facility, [it] will not decide

the issue of Michael Anagnos's damages." The district court explained that the jury

had to answer "special interrogatory number 1A," which asked, "Do you find from

5

a preponderance of the evidence . . . That the Nelsen Residence and Jerome

Valenta operate a residential care facility?" The jury marked "no" on the special

interrogatory, which stated that a negative answer was dispositive of Anagnos's

claim for minimum wages. Later, the district court entered judgment in favor of

The Residence and Valenta and against Anagnos's claim for unpaid state minimum

wages.

## II. STANDARDS OF REVIEW

We generally review for abuse of discretion the denial of a requested jury

instruction, *Burchfield v. CSX Transp., Inc.*, 636 F.3d 1330, 1333 (11th Cir. 2011),

and of a special interrogatory verdict form, *McNely v. Ocala Star-Banner Corp.*,

99 F.3d 1068, 1072 (11th Cir. 1996), but we review *de novo* whether an

instruction and verdict form accurately reflect the law, *id.*

## III. DISCUSSION

The resolution of this appeal turns on the meaning of the minimum wage

amendment to the Florida Constitution. Fla. Const. art. X, § 24. "[T]he preeminent

canon of statutory interpretation requires us to 'presume that [an enactment] . . .

says . . . what it means and means . . . what it says there.'" *Am. Bankers Ins. Grp. v.

United States*, 408 F.3d 1328, 1332 (11th Cir. 2005) (quoting *BedRoc Ltd., LLC v.

United States*, 541 U.S. 176, 183 (2004)). Because the Wage Amendment is

written in clear, unambiguous language, we can "begin with the . . . text, and end

there as well." *Id.* (brackets omitted) (quoting *BedRoc*, 541 U.S. at 183). In so doing, we give the words in the Wage Amendment their plain and ordinary meaning. *See id.*

The Wage Amendment makes plain that employees receive the same protection under state law that they enjoy under the Fair Labor Standards Act. Its subsection (b) gives its "terms 'Employer,' 'Employee' and 'Wage' . . . the meanings established under the federal Fair Labor Standards Act (FLSA) and its implementing regulations." *Id.* § 24(b). Use of the word "meanings" connotes that the Wage Amendment incorporates not only the definitions of, but also the criteria for coverage as, an employer and an employee under federal law. *See Advisory Op. to Att'y Gen. re Minimum Wage*, 880 So. 2d 636, 641–62 (Fla. 2004). And subsection (f) declares an "inten[tion] that case law, administrative interpretations, and other guiding standards developed under the federal FLSA shall guide the construction of this amendment and any implementing statutes or regulations." *Id.* § 24(f). That subsection reflects that the Wage Amendment should operate like the federal minimum wage law. *Id.* § 24(f); *see Minimum Wage*, 880 So. 2d at 641 ("point[ing] out that the . . . amendment . . . incorporates a reference to the entire body of law under the FLSA").

The Wage Amendment also contemplates the use of implementing legislation. It provides that "[t]he state legislature may by statute . . . adopt any

7

measures appropriate for the implementation of this amendment." Fla. Const. art. X, §24(f). Based on that authority, the Legislature passed the Wage Act "to provide measures appropriate for the implementation of [section] 24, Art. X of the State Constitution." Fla. Stat. § 448.110(2). The Wage Act provides a specific minimum wage for all hours worked in Florida and limits it to "[o]nly those individuals entitled to receive the federal minimum wage under the federal Fair Labor Standards Act and its implementing regulations." *Id.* § 448.110(3). The Wage Act also incorporates the exemptions and restrictions in sections 213 and 214 of the Fair Labor Standards Act "as interpreted by applicable federal regulations and implemented by the Secretary of Labor." *Id.*

The Fair Labor Standards Act requires an employee seeking to collect unpaid minimum wages to prove that he was employed by a covered employer. The Act states that employers must pay the applicable minimum wage to an employee "who is . . . employed in an enterprise engaged in commerce or in the production of goods for commerce . . . ." 29 U.S.C. § 206(a). An "'enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose . . . ." *Id.* § 203(r)(1). As pertains to Anagnos, the activities of an employee are "deemed . . . activities performed for a business purpose," if completed "in connection with

8

. . . an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises . . . ." *Id.* § 203(r)(2)(A).

The district court correctly instructed the jury. *See McNely*, 99 F.3d at 1072. Anagnos's entitlement to minimum wages was dependent on his coverage under the Fair Labor Standards Act. *See* Fla. Const. art. X, § 24(b), (f); Fla. Stat. § 448.110(2), (3). Under the federal law and concomitantly the state Wage Amendment, Anagnos had to prove that The Residence and Valenta were covered employers by virtue of operating a residential care facility. *See* 29 U.S.C. §§ 203(r)(1), 203(r)(2)(A), 206(a). The jury found that The Residence and Valenta did not operate a residential care facility, and Anagnos does not dispute that finding on appeal.

We affirm the judgment in favor of The Residence and Valenta.

**AFFIRMED.**